IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HOME DEPOT U.S.A., INC., §
§
    Plaintiff, §
§
VS. §
§
NATIONAL FIRE INSURANCE §
COMPANY OF HARTFORD, §
§ Civil Action No. 3:06-CV-0073-D
    Defendant- §
    Third-Party Plaintiff §
§
VS. §
§
EXPRESS SITE PREPARATION, INC. §
and AMERICAN EQUITY INSURANCE §
COMPANY, §
§
    Third-Party Defendants. §

MEMORANDUM OPINION
AND ORDER

    This insurance dispute——in which the plaintiff alleges that
the defendant insurance company owed a duty to defend it in state
court litigation——presents questions governed by Florida law. The
court must decide whether the plaintiff was covered as an
additional insured and whether it was required by contract to
exhaust other available insurance (including self-insured
retention) before the defendant insurance company owed it a
defense. For the reasons that follow, the court concludes that the
plaintiff was an additional insured, that it was not required to
exhaust other available insurance (including self-insured
retention), and that it is entitled to summary judgment as to
liability on its breach of contract claim.

I

Plaintiff Home Depot U.S.A., Inc. ("Home Depot") sues defendant National Fire Insurance Company of Hartford ("National Fire"), alleging that National Fire failed to comply with its contractual duty to defend Home Depot against claims asserted in a Texas state court lawsuit brought by Boxcars Properties, Ltd. ("Boxcars"). *Boxcars Properties, Ltd. v. W. Hills Joint Venture*, No. 22433 (278th Dist. Ct., Walker County, Tex.) (the "*Boxcars Litigation*").[1]  Boxcars filed the suit against Home Depot and several other defendants to recover damages that Boxcars allegedly sustained when land adjacent to its property was excavated during the construction of a Home Depot store.  According to Boxcars's petition, the excavation caused water run-off that resulted in a loss of lateral support for, and damage to, Boxcars's apartment buildings and real property.

Home Depot hired Rockwell Construction Corp. ("Rockwell") as the general contractor for the store's construction.  The agreement between them required that Rockwell procure and maintain a comprehensive general liability insurance ("CGL") policy that named Home Depot as an additional insured.  Rockwell was covered under a CGL policy (the "Policy") issued by National Fire during the period in which the claims in the *Boxcars Litigation* arose.

---

[1]National Fire has filed a third-party action against two third-party defendants.  That action is not the subject of this motion.

After Boxcars filed the *Boxcars Litigation*, Home Depot made a written demand on National Fire to provide a defense to, and to indemnify, Home Depot, but National Fire refused.  Home Depot paid for its own defense.  The *Boxcars Litigation* later settled, and defendants obtained a complete release.  Home Depot did not pay any money to Boxcars as part of the settlement, but it incurred attorney's fees and costs in defending itself.

Home Depot then filed this suit against National Fire, asserting that it had breached its contractual obligation to defend Home Depot in the *Boxcars Litigation*.  Home Depot seeks the attorney's fees and costs it incurred in defending itself in the *Boxcars Litigation*, and it also sues for the attorney's fees and costs incurred in prosecuting the instant lawsuit.  Home Depot now moves for summary judgment on its breach of contract claim. National Fire opposes the motion.[2]

II

Home Depot moves for summary judgment on its claim that National Fire breached its contractual duty to defend Home Depot in the *Boxcars Litigation*.

---

[2]National Fire objects to the motion, maintaining that, if Home Depot is also seeking to hold it liable for breaching a duty to indemnify Home Depot, the motion is one for partial summary judgment.  It is clear, however, that Home Depot is only alleging that National Fire breached its duty to defend Home Depot.

Under Florida law,[3] "[t]he burden is on the insured to prove that the insurance policy covers a claim against it."  *E. Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. Dist. Ct. App. 2005) (citing *Hudson Ins. Co. v. Double D Mgmt. Co.*, 768 F. Supp. 1542 (M.D. Fla. 1991)).  "Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage."  *Id.* (citing *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997)).  "If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion."  *Id.* (citing *Lafarge*, 118 F. 3d at 1516).

Because Home Depot bears the initial burden of proving that the Policy entitled it to a defense, to be entitled to summary judgment on its breach of contract claim, it "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v.*

---

[3]As a threshold matter, the court must determine whether Texas or Florida law controls its decision on Home Depot's motion.  In making a choice-of-law determination, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state, here Texas.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000).  Texas courts use the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws (1971) for all choice-of-law cases except contract cases in which the parties have agreed to a valid choice-of-law clause.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984).  National Fire argues in its response, and Home Depot agrees in its reply brief, that Florida law applies.

*Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  In other words, to secure summary judgment, it must demonstrate without genuine and material factual dispute, and as a matter of law, that it was covered under the Policy and that National Fire owed it a defense.

III

Home Depot maintains that it was entitled to a defense in the *Boxcars Litigation* because it was covered as an "additional insured" under the terms of the Policy.  National Fire contends that Home Depot would qualify as an additional insured only if the plaintiffs in the *Boxcars Litigation* sought to hold Home Depot vicariously liable for Rockwell's acts or omissions.

A

The Policy contained a Contractor's Blanket Additional Insured Endorsement ("Endorsement") that provided:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under
> 1.  A written contract or agreement; or
> 2.  An oral contract or agreement . . . ; but the written or oral contract or agreement must be:
> > 1. Currently in effect or becoming effective during the term of this policy; and
> > 2. Executed prior to the "bodily injury," "property damage," "personal injury" or "advertising injury."

P. App. 112 (bold font omitted).  Home Depot maintains, and National Fire does not dispute, that pursuant to the express terms

- 5 -

of the contract between Home Depot and Rockwell, Rockwell was required to add Home Depot as an additional insured under its policy with National Fire, and the contract between Rockwell and Home Depot was executed prior to the property damage that served as the basis for the *Boxcars Litigation*. This would seem to support the conclusion that Home Depot was an additional insured under the Endorsement. But there is a further limitation in determining whether a party will be covered as an "additional insured" under the terms of the Policy. Another provision of the Endorsement states:

> The insurance provided to the additional insured is limited as follows:
> 1. That person or organization is only an additional insured with respect to liability arising out of:
> a. Your premises
> b. "Your work" for that additional insured; or
> c. Acts or omissions of the additional insured in connection with the general supervision of "your work."

*Id.* The Policy's introduction defines the term "you" as the named insured, which in this case is Rockwell, and "your work" is defined as "work or operations performed by you or on your behalf." *Id.* at 75, 86.

Home Depot maintains that the undisputed facts establish that Boxcars sought recovery for property damage sustained to its apartment buildings that was allegedly caused by an excavation cut made by Rockwell and/or one of its subcontractors. It therefore

- 6 -

argues that the undisputed facts establish that the alleged liability of Home Depot in the *Boxcars Litigation* arises out of Rockwell's work for Home Depot.  Thus Home Depot maintains that it is covered as an "additional insured" under the express terms of the Endorsement, and National Fire owed Home Depot a defense in the *Boxcars Litigation*.

National Fire counters that, under Florida law, Home Depot would only qualify as an additional insured if the plaintiffs in the *Boxcars Litigation* sought to hold Home Depot vicariously liable for Rockwell's acts and/or omissions.  National Fire argues that because the latest petition contains allegations that *all* defendants were negligent in acquiring, designing, and/or engineering the Home Depot store's construction site, Home Depot is not merely vicariously liable for Rockwell's negligence.  Rather, it reasons that because the petition establishes that Boxcars is suing Home Depot for its own negligence, Home Depot is not covered as an additional insured.

Home Depot argues in reply that the court is not limited to the latest amended petition, but rather is entitled to rely on all the petitions in the *Boxcars Litigation* to determine whether Home Depot's liability arises solely from Rockwell's work for Home Depot.  It posits that the duty to defend an insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.  Because any

doubts regarding the duty to defend are resolved in favor of the insured, and because Boxcars alleged in its pleadings that Rockwell performed construction on the Home Depot site and asserts claims against Home Depot based on principles of vicarious liability related to the construction of the Home Depot site, Home Depot maintains that the allegations invoke National Fire's duty to defend Home Depot as an additional insured under the Policy.

B

By the express language of the Endorsement, Home Depot would be considered an additional insured, and therefore entitled to a defense from National Fire, for any allegations of liability arising out of Rockwell's work for Home Depot. Thus to the extent Boxcars sought to hold Home Depot liable for Home Depot's own negligence, the Endorsement would not cover Home Depot. But insofar as Boxcars sought to hold Home Depot liable for the negligence of Rockwell, Home Depot would be covered as an additional insured. Before the court can determine whether Boxcars was suing Home Depot for its own conduct or vicariously, it must first decide what documents it is permitted to consider.

Under Florida law, "[t]he general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses. *Amerisure Ins. Co.*

*v. Gold Coast Marine Distribs., Inc.*, 771 So.2d 579, 580 (Fla. Dist. Ct. App. 2000) (citing *Smith v. Gen. Accident Ins. Co. of Am.*, 641 So.2d 123, 124 (Fla. Dist. Ct. App. 1994); *Marr Invs., Inc. v. Greco*, 621 So.2d 447, 449 (Fla. Dist. Ct. App. 1993); *Reliance Ins. Co. v. Royal Motorcar Corp.*, 534 So.2d 922, 923 (Fla. Dist. Ct. App. 1988); *Bennett v. Fid. & Cas. Co. of N.Y.*, 132 So.2d 788 (Fla. Dist. Ct. App. 1961)). "If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merit of the lawsuit." *Id.* (citing *Smith*, 641 So.2d at 124; *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So.2d 611, 612-13 (Fla. Dist. Ct. App. 1982)). "Furthermore, any doubt about the duty to defend must be resolved in favor of the insured." *Id.* at 580-81 (citing *Marr Invs., Inc.*, 621 So.2d at 449).

National Fire maintains that Florida courts will only consider the allegations included in the most recently amended complaint; it therefore argues that this court should only take into account those allegations in determining whether Home Depot was covered as an additional insured. Home Depot counters that a duty to defend arises if facts alleged in any pleading fairly and potentially bring the legal action within policy coverage, and if a subsequent pleading fails to assert any allegation falling within the policy's coverage, an insured can recover those damages attributable to the insurer's refusal to defend the case during the period when the

pleadings invoked the duty to defend.

Under Florida law, "[i]t is well-established that an amended pleading supersedes an earlier pleading unless it expresses an intent to preserve portions of the earlier pleading." *State Farm Fire & Cas. Co. v. Tippett*, 864 So.2d 31, 32 (Fla. Dist. Ct. App. 2004) (citing *State Farm v. Higgins*, 788 So.2d 992, 995 (Fla. Dist. Ct. App. 2001)). "Consequently, when an original complaint has been superseded by an amended complaint, the original complaint can no longer furnish a basis for determining the insurer's duty to defend." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 815 (Fla. Dist. Ct. App. 1985) (citing *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Harris*, 184 So.2d 837 (Ala. 1966)). "It follows, therefore, that where an amended complaint alleges facts that clearly bring the entire cause of action within a policy exclusion, and the amended complaint contains no additional counts or causes of action which show coverage, the allegations in the amended complaint control and the insurer's duty to defend comes to an end." *Id.*

In *Baron Oil* a Florida court held that "[o]nce the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit." *Id.* In that instance, the insurer no longer has a continuing duty to defend. Thus where an insurer files a declaratory judgment action against

- 10 -

the insured to determine whether it owes the insured a duty to defend the insured in litigation that is still pending, courts will consider only the latest amended complaint in determining whether the insurer's obligation to defend the insured has arisen. *Tippett*, 864 So.2d at 32-33 ("the allegations in the [plaintiff's latest] Amended Complaint determine State Farm[']s duty to defend."). But in an action against the insurer for a breach of the duty to defend, if the court finds that the insurer had a duty to defend the insured, but that this duty ceased when the plaintiff in the underlying litigation filed an amended complaint, it will nonetheless award the insured damages attributable to the insurer's refusal to defend the case from the filing of the original complaint to the filing of the amended complaint. *Baron*, 470 So.2d at 815.

To determine whether Home Depot is covered under the Endorsement as an additional insured for all or at least part of the *Boxcars Litigation*, the court will therefore consider all the underlying pleadings.

C

In its original petition, Boxcars relied on the theory of *respondeat superior* in its negligent construction and negligent design/engineering claims. Specifically, it alleged in its petition: "Plaintiff asserts the principles of *respondeat superior* for the construction of the Home Depot in Huntsville, Texas whether

- 11 -

the work was negligently performed by the contractor or someone else for the benefit of the owner of the Property." P. App. 132. The court assumes that the term "contractor" in the original petition refers to Rockwell, and that in both claims relying on theories of *respondeat superior*, Boxcars is seeking to hold "All Defendants," which would include Home Depot, liable for the negligence of the contractor. *See Baron*, 470 So.2d at 814 ("If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend."). The first and second amended petitions allege this same *respondeat superior* theory. P. App. 144-145; 157-58. The court accordingly holds that Home Depot has established beyond peradventure that it was covered as an additional insured for the liability Boxcars sought to impose vicariously on Home Depot in its original, first amended, and second amended petitions under a *respondeat superior* theory based on the work allegedly negligently performed by Rockwell, the contractor. P. App. 132.

In Boxcars' third, fourth, and fifth amended petitions, Boxcars no longer used the term "*respondeat superior*" to describe its theory of liability. But the liability Boxcars sought to impose on Home Depot nonetheless arose out of Rockwell's work for Home Depot and thus made Home Depot an "additional insured" under the Policy. Boxcars alleged that the Home Depot store was

- 12 -

constructed by Rockwell and owned by Home Depot.  P. App. 166, 178; D. App. 79.  It nowhere averred that Home Depot took part in the construction of the Home Depot store.  Additionally, Boxcars alleged that "an ordinary prudent *contractor*/engineer in the same or similar circumstances would have noted that the excavation of the whole of the Property including drainage and sewer lines would have, in reasonable probability, caused loss of support to neighboring property regardless of the skill in performing the excavation."  P. App. 168, 181; *see also* D. App. 82 (emphasis added).  By this allegation, Boxcars asserted that Rockwell——the contractor——should have predicted the result of the excavation. Boxcars did not allege that Home Depot——a reasonably prudent *owner*——should have known.  Furthermore, the claim is one for damages for negligent *construction*.  Home Depot's employees did not construct the Home Depot store, and Boxcars nowhere alleged that they did.  Thus to the extent Boxcars sought to hold Home Depot liable for the negligent construction of its store, this was necessarily based on the negligence of the builder, in this case, Rockwell.  Thus the court concludes that at least part of the theory for holding Home Depot liable was based on the negligent acts of its contractor, Rockwell.  And this liability certainly arose from the work Rockwell performed for Home Depot.

To the extent Boxcars's other theories of liability did not rely on the work of Rockwell, but sought to hold Home Depot

- 13 -

directly liable for Home Depot's own acts or omissions——such as, for example, the strict liability claims against the owner of the Property (Home Depot)——Home Depot may not be an "additional insured."  It is clearly established under Florida law, however, that once the duty to defend arose as to part of the suit, National Fire was obligated to defend Home Depot against all claims asserted against it.  *See Baron Oil Co.*, 470 So.2d at 813-14 ("The duty to defend is distinct from and broader than the duty to indemnify the insured against damages assessed, and if the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit."); *Tropical Park, Inc. v. U.S. Fid. & Guar. Co.*, 357 So.2d 253, 256 (Fla. Dist. Ct. App. 1978) ("Where the complaint contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit.").  Because the third, fourth, and fifth amended petitions established that at least one ground for holding Home Depot liable was the negligence of Rockwell in constructing the Home Depot store, Home Depot is an additional insured, giving rise to National Fire's duty to defend Home Depot against all of the claims asserted against it.

IV

National Fire also maintains that even if Home Depot is considered an "additional insured" under the Endorsement, it nonetheless is not entitled to a defense because Home Depot failed to exhaust its other sources of insurance coverage. Home Depot responds that there was no other valid and collectible insurance available for it to exhaust, because Florida law does not recognize a self-insured retention as other valid and collectible insurance, and its own primary liability policy was an excess policy that did not apply until it had exhausted its self-insured retention.

A

National Fire relies on the Endorsement's "other insurance" clause, which states that the insurance provided

> is excess over: Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

D. App. 219. Because the contract between Home Depot and Rockwell did not require that the additional insured coverage be on a primary or primary and noncontributing basis, National Fire argues that it only had a duty to defend Home Depot once Home Depot exhausted its "other valid and collectible insurance." It

- 15 -

maintains that the American Alternative Insurance Corporation policy ("AAIC Policy"), which is Home Depot's own primary liability policy, and Home Depot's self-insured retention, constitute "other valid and collectible" insurance.  National Fire argues that Home Depot was obligated to exhaust its $1 million per-occurrence self-insured retention before coverage under the AAIC Policy came into play and, in turn, coverage under National Fire's Policy could not be implicated unless and until Home Depot exhausted the AAIC Policy's $4 million limit of liability.

Home Depot argues in reply that Florida law does not recognize a self-insured retention as "other valid and collectible insurance" within the meaning of an "other insurance" clause.  Thus because a self-insured retention does not constitute "other valid and collectible insurance," Home Depot maintains that it was under no obligation to exhaust its self-insured retention before seeking a defense from National Fire.  It also posits that because the AAIC Policy was itself an excess policy that did not apply until Home Depot had exhausted its self-insured retention, and because it is undisputed that the attorney's fees and defense costs that Home Depot incurred did not exceed the self-insured retention, the excess insurance policy provided by the AAIC Policy did not provide valid and collectible insurance to Home Depot.  Home Depot therefore argues that there was no other valid and collectible insurance available for Home Depot to exhaust before seeking a

defense from National Fire.

B

The court must first determine whether, under Florida law, Home Depot's self-insured retention constituted "other valid and collectible insurance" that Home Depot was required to exhaust before seeking a defense from National Fire.  Under the Florida Insurance Code, "Insurance" is defined as "a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies."  Fla. Stat. Ann. § 624.02.  "Self-insurance . . . does not fall within this definition and, therefore, is not 'other collectible insurance.'"  *State Farm Mut. Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So.2d 1184, 1186-87 (Fla. Dist. Ct. App. 1981) (citing 8A Appleman, Insurance Law and Practice § 4912 (1981)), *review denied*, 413 So.2d 877 (Fla. 1982).

National Fire urges that Home Depot's self-insurance policy did constitute "other valid and collectible insurance," citing *Aetna Casualty & Surety Co. v. Market Insurance Co.*, 296 So.2d 555, 557 (Fla. Dist. Ct. App. 1974), as an example that supports its argument.  National Fire's reliance on this case is misplaced.

In *Aetna Casualty & Surety Co.* Judith Morse ("Morse") rented a vehicle from National Car Rentals ("National") and purchased the collision damage waiver.  *Id.* at 557.  The collision damage waiver stated that "a customer who has accepted purchase of C.D.W. is

- 17 -

covered by an automobile liability insurance policy which is [p]rimary [i]n respect to other insurance as may be carried by the renter." *Id.* National was self-insured for $25,000 and was insured by Market Insurance Company ("Market") under an excess liability policy with a liability limit of $975,000. Morse's own insurance policy with Aetna Insurance Company ("Aetna") contained an "other insurance" clause that provided that Aetna's coverage for a non-owned vehicle would be excess insurance over any other valid and collectible insurance. *Id.*

While driving the rented vehicle, Morse struck a pedestrian, who subsequently sued Morse, National, Aetna, and Market. *Id.* at 556-557. Market defended National and Morse, stipulating with Aetna that the coverage issue would be resolved separately. *Id.* at 557. Market settled with the pedestrian for $750,000. *Id.* at 557. On appeal, the court held that, pursuant to Morse's rental agreement, National was a primary insurer to Morse, and it was therefore obligated to defend Morse up to the limit of its liability ($25,000). *Id.* at 558. The court also concluded that because the Aetna policy explicitly provided with respect to a non-owned vehicle operated by the named insured that the coverage would be excess insurance over any other valid and collectible insurance, and because the Market policy contained no such "excess coverage" provision, Market's excess liability policy constituted "other valid and collectible insurance," and Market was therefore

obligated to pay the remainder of the settlement. *Id.* Accordingly, although National was self-insured up to $25,000 with respect to the renter (Morse), National was a primary insurer. National's agreement with Morse therefore fit within the statutory definition of "insurance," because National entered into a contract with Morse to indemnify her in the event of a vehicle accident. *Id.* at 557.

Unlike National, Home Depot did not agree to indemnify any other party. Rather, its self-insurance only covers its own losses. This fact distinguishes this case from *Aetna Casualty & Surety Co.* and undercuts National Fire's argument. Given the holding of *State Farm Mutual Automobile Insurance Co.*, 406 So.2d at 1186-87, Home Depot's self-insurance does not fit within the statutory definition of "insurance" under Florida law. Therefore, Home Depot's self-insurance does not constitute "other valid and collectible insurance."

C

The court next considers whether the AAIC Policy constituted "other valid and collectible insurance available to the additional insured." The plain meaning of the Endorsement language requires that the "other valid and collectible insurance" actually be available for collection by the additional insured. The AAIC Policy provides, in relevant part:

- 19 -

> We will assume charge of the settlement or
> defense of any claim or suit against the
> insured only after the Retained Amount is
> exhausted by payments made by or on behalf of
> the insured for injury or damage to which this
> policy applies; provided there is no duty to
> defend under any other insurance.

D. App. 97 (bold font omitted). The retained amount under the AAIC Policy is $1 million per occurrence. Home Depot maintains that it incurred $128,708.47 in consequential damages stemming from the breach of the duty to defend.[4] It is undisputed that Home Depot did not approach exhaustion of its retained amount "by payments made by or on behalf of the insured for injury or damage to which [the AAIC] policy applies." D. App. 97. Home Depot maintains that it did not pay any amount of money for damages in the settlement with Boxcars in the *Boxcars Litigation*. And even if the court assumes that the costs Home Depot incurred in defending itself would be counted in determining whether Home Depot had exhausted its self-insured retention (an assumption the court is unsure the AAIC Policy would even support), Home Depot's defense costs were nowhere near $1 million. It is therefore undisputed that Home Depot could not have collected its attorney's fees and defense costs under the AAIC Policy. Accordingly, the AAIC Policy did not

---

[4]This amount actually represents the costs incurred by Home Depot in defending itself in the *Boxcars Litigation* and in bringing the present suit to recover its costs from National Fire. P. App. 192. Therefore, the court assumes that the amount Home Depot spent in defending itself in the *Boxcars Litigation* was actually less than $128,708.47.

constitute "other valid and collectible insurance available to the additional insured."

V

Home Depot maintains that it is entitled to recover $128,708.47 for the attorney's fees and costs it incurred in defending its interests in the *Boxcars Litigation*. This figure, however, appears to include not only expenses that Home Depot incurred in defending itself in the *Boxcars Litigation* but some of the attorney's fees and costs it has incurred in prosecuting the instant case. This potentially blends two different decisions, one to be made by the trier of fact and the other to be made by the court. Attorney's fees and costs incurred in the *Boxcars Litigation* defense are determined by the trier of fact as part of Home Depot's breach of contract claim. Those expended in prosecuting the present lawsuit are awarded by the court under the procedures specified in Fed. R. Civ. P. 54(d) and N.D. Tex. Civ. R. 54.1. The court is therefore unable to grant summary judgment awarding Home Depot specific relief on its breach of contract claim without the possibility of awarding duplicative attorney's fees and costs. It will therefore limit its grant of summary judgment to liability alone.

*     *     *

The court grants Home Depot's motion for summary judgment on its breach of contract claim to the extent of holding that National

Fire breached its duty to defend Home Depot in the *Boxcars Litigation*.  Home Depot is entitled to recover from National Fire the attorney's fees and costs it incurred defending itself in the *Boxcars Litigation*, as determined by the trier of fact or by stipulation of the parties.[5]  It is also entitled to recover its reasonable attorney's fees and costs incurred in prosecuting this lawsuit, to be determined after the court enters a final judgment.

**SO ORDERED.**

March 21, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[5]National Fire can stipulate to the amount of attorney's fees and costs without waiving its arguments that Home Depot is not entitled to recover against it on the merits.

- 22 -